I wanted to let you know that Justice McDade is the third justice. Unfortunately, she's had an emergency and is unable to join us today, but she will, of course, listen to the arguments afterwards, because they're taped and will otherwise participate in the case. So with that in mind, Mr. Moran, are you ready to proceed? I am, Your Honor. Excuse me. I need to call the case real quick. Oh, sorry. I didn't see it. That's okay. 3-2-2-0-3-6-5 Eric L. Thompson Appellant v. the Village of Bolingbrook and Village Board of Trustees of the Village of Bolingbrook, Appelese. All right, Mr. Moran, you may proceed. Thank you, Your Honor. And if it may please the court, my name is Scott Moran and I represent Mr. Thompson, the plaintiff appellant in this matter. The issue before the court today is how plaintiff's determination to be catastrophically disabled under the Public Safety Employee Disability Act 820 ILCS 320-10A specifically is determined. And this act is commonly known as the placebo statute. And this statute provides healthcare to injured public safety workers. Uh, if they meet both of the required elements within the statute, firefighter Thompson suffered two injuries on the same day while working for the Village of Bolingbrook on January 15th of 2018, the first injury occurred at the scene of an accident on interstate 55, where he slipped and fell on some ice. And the second injury occurred later that morning while performing maintenance duties in the firehouse. He was pulled, starting a chainsaw. He was unable to recover from those. He filed for a disability before the pension fund and the fund convened a pension code 40 ILCS 5 slash 4, uh, on January 14th of 2021. In their adjudication of that, the pension fund determined. And I'll quote from them. It says it's clear from the record that his actions, both slipping on the ice while responding to an emergency call. And also his starting of the chainsaw during the routine maintenance were causes of his permanent disability. So the pension board found both injuries were disabling. And plaintiff then applied for placebo benefits with the village with the determination of the pension board, finding that both of these injuries were disabling the 10 a requirement was satisfied as a matter of law, as, as being catastrophically disabled. And that's for both injuries. It's not one. It's not the other it's both. And how do we know that it's satisfied as a matter of law? Four times. The Supreme court has taken this issue up the first in 2003, where we'd be Bloomington is anybody has any experience in placebo. We know that law was written pretty gray and what was catastrophic injury and catastrophically disabled me. So in Crowley, the court held, and it was a unanimous decision that the legislative history and debates were clear. And then a catastrophic injury is synonymous with an injury for which an employee is awarded a line of duty disability pension. So in other words, the only way to determine 10, a is to go before the pension board and receive a line of duty disability pension. That's it. The sole and exclusive manner. It came up again in 2011 and NOAC beat country club Hills. And NOAC, the court was trying to figure out when does the villages liability attached to start paying. But the court again confirmed in its writings that a catastrophic injury is a term of art, and it means an injury that results in the awarding of a line of duty disability pension. In 2012, it comes up again. And before the Supreme court in Gaffney, the board of trustees of Orland fire protection district. And there, they were trying to figure out if an injury incurred during a training was met 10, a, and again, the court held that 10, a is from the line of duty pension. But we really see a change in the approach of the court in this, in a case that really does parallel what we're going through here today. And that's the village of Vernon Hills. The healing 2015 aisle one, one eight, one seven. Oh, and in there, the court really defined what it meant when it said that a pension board decision is synonymous with the 10, a ruling. It said that Helan's award of a line of duty disability pension establishes that he suffered a catastrophic injury as a matter of law, but as a matter of law, that's pretty clear language coming from the Supreme court on how we figure. Mr. Moran, I don't think anybody's disputing that a pension award satisfies 10, a as a matter of law. I'm not so certain about your reliance on Helan in the sense that in Helan, the parties stipulated or agreed that 10, b was not an issue, so how do you use Helan to say that a 10, a determination controls the 10, b inquiry? If we go to the administrative hearing that occurred in front of the placebo hearing officer, she went through, the village presented a case that the, the injury of slipping and falling on the ice never occurred. They put forth a case that said that accident didn't occur. She did a 10, a analysis and she came to the decision that the slip and fall never occurred. She doesn't have any jurisdictional authority to look at a 10, a issue. When we get to the placebo hearing, the only thing that the hearing officer can do is take the injuries that were found to be disabling by the pension board, in this case, two of them, and ask the question, does each of those come to the determination that they, in this instance, did those injuries occur in what is reasonably believed to be in an emergency? Are you telling me that if the pension board had said, had concluded, you know what, we can't say one way or the other. We're not sure about the slip and fall and whether it contributed to the injury, but we do think the pulling of the chainsaw, you know, we think that did cause the injury. So based on that, at least we're going to award a pension. So under your analysis, what's the placebo, the hearing officer supposed to do? Are she precluded from revisiting and considering whether the slip and fall was a cause of the injury such that he might be awarded the benefits or not? How would it work in that context? I do agree with you, your honor. Let's say, for instance, the pension board did their analysis and came back and said, the slip and fall didn't happen. We don't, we're not awarding any benefits on the slip and fall at the accident. We're awarding a disability solely on changing, pulling the chainsaw. My client would not have a claim for placebo benefits. And I could not raise that issue in front of the hearing officer later. What if, what if instead they just said, you know, we don't know, we don't conclude one way or the other, but based upon what happened at the station, he's entitled to pension benefits. I think that would limit my case, your honor. I think the Supreme court's decision is pretty clear. That's the sole venue in all of those cases to determine if they've met 10A. There is no other standard which provides that anybody else to review and look at 10A. And so you don't think, you don't think the Supreme court indicating that or pointing out that 10B was not an issue in Helan, uh, raises the possibility that, uh, a 10A finding does not preclude looking at whether the injuries were a result of, uh, an emergency response. I think the hearing officer has the right to take those injuries and determine if they did occur in this instance to an emergency response, but she doesn't have the right to review those injuries as determined by the pension board, that the pension board decision is really a threshold in opening the door to get us to a 10B decision. If, if I haven't met 10A at the pension board, I can't even go to the village and say, I want a 10B analysis. And I haven't even opened the door. So in this case, the hearing officer had nothing to do except rubber stamp the 10B finding. I don't think so. She certainly could have taken both of those injuries. A, did the slip and fall on I-55 occur at an emergency? And in her ruling, she said that call on I-55 was an emergency. He just was never injured there. And then take the second injury and say, does, does starting the chainsaw occur at an emergency and there is nothing really for her to rubber stamp. She still would have to analyze between the injury and the manner in which it occurred. Cause 10B really limits those areas in which placebo applies. Did I answer your honor's question? You did answer it. Yes. Please, please continue. Okay. So I do think Healan does control whether, um, the, the village stipulated or not, it doesn't matter. And in this instance, the village did stipulate the 10A was satisfied. The issue is, did, did either of those meet a 10B standard? And there's no authority that shows that anybody other than a pension board can come to a 10A analysis. Every single case, all of the Supreme court ones point to the pension board's decision and its brief defendant, uh, goes on to talk about. Um, how they should not be held to the pension board standard. They talk about while the injury occurred on duty, attempting the chainsaw, they had no reason or incentive to appear in front of the pension board proceedings because they did not intervene in those. They, they stayed out. They point out that plaintiff wasn't cross-examined, no witnesses, no story. All of those things are facts that were relevant in Healan. In the, in the village of Vernon Hills v. Healan, the village didn't intervene there either. And the village in Healan talked about how they were, uh, it was a due process issue and the court rejected that. Okay. They said that the village's extent to litigate, uh, uh, is a result of the statute in its writings itself. And they go on and say that the village's strategic choice not to participate or file a petition to intervene constituted a forfeiture, forfeiture of any due process claim. And while the village here has not argued a due process claim in essential, that's what they're arguing. We didn't get it part of the pension board. We could have, we chose not to. And now they try to litigate this 10A issue in a different forum where there's no authority that grants a 10A anywhere else. So they can't complain now that they're not bound by that decision of the pension board and the hearing officer is also bound by that decision also. She has no right to review the pension board's decision, not either through the statute, through any common law authority or under the administrative review law. So she, in my opinion, your honor is bound by both of those injuries and to determine if they meet any one of those limiting factors in 10B, right? There was an argument about collateral estoppel that we were asserting. This is a collateral estoppel issue. It is not a collateral estoppel. Again, in Helan, the court said that because this was resolved as a matter of law, we don't have to resort to an analysis of collateral estoppel. We believe that the hearing officer has the right to analyze the 10B issue based on the pension board's award. Let me look, I'm going to rephrase the collateral estoppel. So under what you're arguing, you're saying that only the only thing the placebo hearing officer could determine at that hearing was if the injury, we'll call it the first injury, although I think that's a misnomer, but the first injury occurred responding to an emergency. That's really, under your analysis, that's the only thing that hearing officer had the authority to do. Not whether it existed or not, only the only issue of facts she had the authority to pass on as whether it occurred in response to an emergency. Yes, sir. That's exactly it. And so would you argue at least collateral estoppel does apply under your analysis to that finding of fact that the first injury did in fact occur, the slip and fall? So following the Supreme Court's logic in Healand, they said collateral estoppel didn't attach because it was already determined as a matter of law. There was nothing left to analyze. I apologize, Justice Peterson. This is actually extra, but it seems funny. We're calling it first injury, second injury. If it occurred the way your position, your client's position is, you know, he wrenched his back at the scene and then just made it worse by, it seems like it's just an aggravation of an ongoing injury, assuming your theory is correct, but that's neither here nor there. So that same issue came up in a case, Richter v. Oak Park, and in Richter, the firefighter got injured in June of 2020 at a fire. And then in November of 2020, he became injured again in the training and went off disabled. And the court said that the injury doesn't have to be the sole injury. It just has to have approximate cause and be part of it. So I think that applies here as well, Your Honor. So what about, I mean, in the Cronin, are you familiar with the Cronin case? I am, Your Honor. I mean, wasn't that very similar in the sense that there was a, I mean, there was approximate cause, but let me put it differently. There was more than one work-related injury and the hearing officer had to determine whether the injury, which was catastrophic, was a function of a response to an emergency. And the hearing officer, if I recall, was not limited to the conclusions of the pension board in that case. So if we look at the decision from Cronin, the court says that under the Cronin case, the pension board was not limited to the four limiting factors. And if it's one of the four limiting factors, we've reached our conclusion. And if you don't meet one of the four limiting factors, then you're not entitled to placebo. All right. Your time is up, Mr.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. In reply, Mr. Horvath. Good afternoon, your honors. My name for the record is Kerry Horvath. I represent the village of Bolingbrook and the board of trustees of the village of Bolingbrook. What I hope to focus on is that the findings and decisions of the, in decision of the hearing officer was a practicing lawyer, she was very clear in her decision, she understood the law and she understood the limited focus of the hearing she was conducted and the factual findings she made was based upon the evidence presented. That's what the court is reviewing. And I want to point out first, the village never questioned whether the evidence of a catastrophic injury never challenged that. And the hearing officer gave a very clear understanding of the law in her determination, in her decision. She crystallized the issue when she said, I turn now to whether the injuries sustained by the applicant were the result of slipping on ice while exiting the ambulance at the scene of the accident on I-55 or whether they were repeated or from repeatedly attempting to pull, start chainsaws and tool checks during his shift on January 15th. That was the issue she was charged with determining. It was causation of Mr. Thompson's injury. Can I just ask a question, Mr. And the hearing officer's analysis in general, it seems to discount the possibility of more than one proximate cause for the catastrophic injury. Is that a unfair observation? Your Honor, I think what she was trying to do was look at what had been presented to her and decide whether the injury that Mr. Thompson acknowledged occurred, took place because he was pulling the chainsaw or whether this slip, which he discussed, he claimed occurred at I-55, took place at all. Can I comment? I think I agree with Justice Brennan, even the way you said it, it begs Justice Brennan's question. Both the way you said it and the way you read it from the words of the placebo officer sound as if it's an either or, that they're mutually exclusive when it can be from both. If the officer thought she had to choose, and that's the way her question sounds, like she had to decide it was either A or B and therefore precluding A and B. Which I don't think is an accurate assessment of the law. I think she did. Well, she did determine that the injury occurred, did not occur because of the fall or the claimed slip at the I-55 accident and that the chainsaw pulling of the chainsaw and the moving of the tools was the cause of the injury. When she looked at the causation issue, that's how she came to her conclusion. Because she finds, she said she found the applicant had not proven by a preponderance of the evidence that his injuries occurred during an emergency accident on the morning of January 15th. And that the testimony introduced proved his injuries were the result of repeatedly attempting to pull start the chainsaw. She was looking at two separate incidents. I can't argue that at all. She was looking at what the, what Mr. Thompson claimed occurred at I-55 and also what was presented in evidence through the documents that were presented. And the fact that Mr. Thompson himself actually admitted in the, when he went to the premier occupational health a week after the accident, that while at work I was doing weekly tool check and I repeatedly tried to start a chainsaw when I felt lower back pain shortly after. That was his description of the problem. And that, that description found its way in the other documentary evidence that was presented, including Mr. Thompson's own report of the incident, which he prepared on the day of the incident, and that was called the National Fire Incident Reporting Services report, where he indicated that there was no injury at all. He could have been indicated at that point in time that he was injured and he did not. The hearing officer had to look at the evidence that was presented. And yes, Mr. Thompson did testify at the placebo hearing that he, he slipped, but he was very, very vague in terms of describing anything else about that particular incident. The witness he presented did not see the slip. The partner he claimed he talked with did not testify. He didn't explain any of the details of the slip. When he went back to work after this supposedly occurred, he didn't tell his supervisor, he did not correct the reports that were prepared by the supervisor and the deputy chief describing the incident and in fact admitted those into the record before the hearing officer. So she did look at what was claimed to have occurred on, at the I-55 accident. And she also looked at what Mr. Thompson, the plaintiff described he was doing and what caused his injury. And based on that evidence made the, reached the conclusion that his injury was not the result of what his response to what he reasonably believed to be an emergency. So your reading of the record is essentially that perhaps she in art, in artfully framed the question initially, but in terms of her analysis, ultimately she concluded that whatever occurred in the I-55 incident, it did not result in an injury or play or even play a role in the injury, which evolved based upon what happened at the station later. That is my reading is that whatever occurred at I-55 did not result in any injury to Mr. Thompson whatsoever. So she must've made an implicit credibility finding in the context of all the documentary evidence you just articulated. I would agree with that, your honor. Yes, because, and that is, I believe it's the prerogative of the hearing officer or, or in an administrative hearing of any sort to, to make a determination of credibility, but she also had some very compelling evidence that was presented to her as to the real cause of Mr. Thompson's injuries. And when, when you look at that, if you, if you use, if you employ the manifest weight standard, because she had to make a conclusion, a factual determination, I don't, I don't think it could be determined that all reasonable and clearly evident that she erred and that she should have reached the opposite conclusion. And even if you went to a clearly erroneous standard with that, I don't know that it would apply here because generally speaking in a, in a clearly erroneous setting, you have one set of facts that you're dealing with, a historical set of facts, and then you're applying the law. But even there, the record that she relied on and that she reiterated in her decision, I don't think it meets that standard. It doesn't leave you with a definite and firm conviction that she, that the hearing officer made a mistake when she made her decision that Mr. Thompson was not injured in response to what he reasonably believed to be an emergency. And if I can focus back for just a moment, Cronin and, Cronin and the Stroba courts both indicated that the decision of the pension board is not inclusive with respect to whether one of the elements of section 10B of the public safety and employee benefits act is met. Because if you, if that were the case, then why have 10B at all? It would render 10B essentially moot, which I believe Justice Brennan, you made that point in your discussion with Mr. Moran. The, the, in terms of the Richter case, Richter actually didn't just say it had to be a contributing factor. It said the contributing cause must have occurred during an emergency response. And in that Rick and in the Richter case, the facts were such that during the course of the workers' compensation proceeding, the village admitted that the plaintiff, Mr. Richter's injuries, okay, were, or that his disability was based on shoulder injuries that occurred during the course of an emergency response. And the court in Richter then applied a collateral estoppel theory to prevent further litigation. That is, that is really not the fact here at all. There was never an admission by the village that Mr. Thompson's injuries occurred during the I-55 accident. The village did stipulate, but stipulated very specifically that the award of the disability pension is evidence of a catastrophic injury because that's what the, the Illinois Supreme Court has stated repeatedly. And the Healan case has no real application in this particular matter. Healan, they admitted that the 10B factor had been met and attempted to argue the question of catastrophic injury. They wanted to put it, put it into evidence. They wanted to do discovery. They wanted to litigate that issue. And the court said, the Supreme Court said, no, it's a matter of statutory construction. We've determined that an award of a line of duty disability pension is, is evidence of the catastrophic injury. You've already admitted that the 10B factor was met. I believe that was an emergency situation and the injury occurred in response to the emergency. So there's nothing to litigate here. That's not applicable in this particular case. Um, the, the, I don't, and I don't believe that the hearing officer ever said, we never argued that Mr. Thompson didn't slip. We just simply said all of the evidence that we have tells us that he wasn't injured there. He was injured when he pulled that chainsaw and when he was moving equipment. And certainly the preponderance, he did not prove, prove by the preponderance of evidence, evidence that his injury occurred at I-55. The preponderance of evidence swings the other way, particularly since he acknowledged he was not injured in one of his exhibits and then admitted that his injury occurred when he was pulling the chainsaw. So is it fair to say that, I'm going to sum up what I think what your position is, is that at that hearing, um, the hearing officer considered all the documents where there isn't a reference to the slip and fall causing his back to wrench, um, but he testified to it. And then one of his colleagues, Fujiti, I think it's a Mr. Fujiti. Mr. Fujiti. Yes. Yeah, he did testify at that hearing before the officer. And again, this is credibility issues, um, that, that he saw the defendant, um, stretching his back. It was concerning enough. And he said, are you okay? And the defendant said, yeah, I just slipped and fell on some ice. So there's at least some testimony in the record that something happened that caused him to start stretching his back and concerned Mr. Fujiti enough to ask him if he was okay. But your position is all that other documentation without references to the slip and the slip, um, is enough for the hearing officer to conclude, um, or I guess better, more, moreover for this court not to conclude that the hearing officer's, um, finding was against the manifest way to the evidence. And Mr. Moran's position is that she didn't have the authority to do that at all. The only thing she had the authority to decide is, was it, was this a response to a, uh, emergency because the injury itself had already been decided as a matter of fact, and under his argument as a matter of law, that's where we're at. I would agree with, with, with that, your Honor. Yes. That, but Mr. Moran's analysis is incorrect. The hearing officer had every right to weigh the evidence that was presented to her and reach a conclusion on whether the 10 B factor of response to an emergency where the injury occurred during the response to an emergency, uh, had been proven by the preponderance of the evidence. Uh, there's, there was not a, that consideration of that was not foreclosed by virtue of the decision of the pension board, which really had no reason to even get into the, the, whether something occurred at I-55 or not. And that finding addressing an emergency is not really the function of the pension board. They just have to determine if something happened while the office, the fire officer was in fact on duty. And so, and the courts are pretty clear in, at least in the Sprobine and Cronin, that that issue under 10 B is not precluded from consider, or the hearing officer is not precluded from making that, determining that issue at the placebo hearing. Right. But the first hearing, it makes perfect sense for that, at that hearing to make a factual finding that an injury occurred at the scene, because not withstanding the, the, uh, emergency response issue that would be in the line of duty also, so it would be within their bailiwick to make that decision, which they did, the question is, is it binding or not? Uh, that's where we're getting to. I think it is not binding on the question on the, before the hearing officer to determine if placebo benefits should be awarded. She is entitled to, or the hearing officer is entitled to look to the causation issue because otherwise I believe what, um, Justice Brennan alluded to the fact it would just almost be like a, I believe you refer to it as a rubber stamp. And there really would be no reason other than to show up at the hearing and, okay, fine, give me my placebo benefits. Mr. Horvath. Thank you very much. Justice Peterson. Any followup questions? Nope. No, thank you. All right. Uh, Mr. Moran reply. Thank you, your honors. So just to kind of go back over a couple of things, Mr. Horvath talked about the facts and his credibility and presenting those arguments and those are all should have been presented in front of the pension board, there are municipalities every single day who file intervention in protect the 10, a issue and to litigate it. And because the village in this instance, didn't they shouldn't get the bonus of relitigating that when 10 a has been settled as a matter of law. They are essentially at two bites of the apple. And when we talk about 10, a it's a causation standard. And if we go back to the Cronin court, they said, if we're required to accept that finding, we're required to accept the causal connection between the work. The hearing officer is bound to accept that causal connection. We're not relying on the word emergency in the pension board's decision. When the board said that he slipped and fell and what's response to an emergency. We are not saying that the pension board made the emergency determination under 10 B. That's within the hearing officers, the placebo hearing officers purview. And I forget the name of it, but that's a Hoffman estates decision where they argued that, that the pension board said it was an emergency. You cannot have a 10 B hearing. I agree. The court got that right in Hoffman estates, just as the same as here. The hearing officer takes the 10 a award as established by the pension board and does a 10 B analysis. And that's it. Mr. Horvath talked about how healing doesn't apply because the village stipulated that 10 B was met. There was a 10 a argument. We're having a 10 a argument. The argument here is, was he injured and who makes the decision where the injury occurred and in healing that decision is a matter of law from the pension board. It doesn't matter who stipulated in healing. The village wanted to relitigate the 10 a. They wanted to depose the doctors who rendered those opinions. They wanted to conduct an entirely separate 10 a hearing and the fact, the fact of a catastrophic injury that somebody was injured in the line of duty. I mean, if we were doing a Venn diagram, that's, that's, that's a big circle. Then there's a, there's a subset inside that diagram. Did that injury occur in the course of an emergency response? I mean, one does not necessarily answer the other question. Does it? And there's some broad language in healing perhaps, but when you actually look to what they're deciding, I mean, they make a point of saying 10 B was not an issue here, which implicitly suggests that maybe it could have been under another fact pattern. So, so I agree. The pension board doesn't decide if that injury happened at the scene of an emergency. They decided and said that the accident on I 55 was disabling the accident on and pulling the chainsaws was disabling the pen. The, the placebo hearing officer then applies those to attend the analysis to determine if those meet the limiting factors, but she has no authority. There's no jurisdiction. It's not in the statute and there are no cases that hold. She gets to reanalyze 10 a. What you're saying is she's not, oh, sorry. Just to be discreet. No, go ahead. Justice Brennan. No, please. So, so what you're saying is we're, we're attaching labels to certain things, but the labels don't really matter. Is it what you're saying is when the board, the pension board makes a finding of fact that an injury occurred and where it occurred, they found it occurred in two different places. That that finding of fact is now restricted, whatever you want to call it. It's binding. It can't be relitigated, even a 10, a 10 B. But you still have to have a 10 B because the 10 B hearing officer decides whether it was an emergency response or whether it was other types of line of duty. So it's really just a question of law at that point for the hearing officer and the 10 B that's your analysis. Yes, Your Honor. Okay. Yes. Otherwise, 10 a, how is it satisfied as a matter of law from the pension board that would render 20 some years of jurisprudence from the Supreme court? Meaningless. What would the value of a pension decision as a matter of law being resolved? If we go to a placebo hearing officer and then they don't have any, they're not bound by that. And there's a whole nother hearing to determine 10 a that undoes 20 years of jurisprudence. Thank you very much. All right. Uh, we thank, uh, both sides for spirited argument. Uh, we will take the matter under advisement and render a decision in due course.